E-FILED
Wednesday, 21 May, 2008 10:11:18 AM
Clerk, U.S. District Court, ILCD

FILED

MAY 2 0 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Jon Roe Morgan, K-60696 | ) |
|     Petitioner, | ) |
| | ) |
| -vs- | ) Case No. 08-3118 |
| | )    (to be supplied by clerk) |
| Donald Hulick, Warden, | ) |
|     Respondent. | ) |

---

## NOTICE OF FILING/CERTIFICATE OF SERVICE

To:  John M. Waters, Clerk
     United States District Court
     Central District of Illinois
      Springfield-Division
     600 E. Monroe St-Suite 151
     Springfield, IL 62701

PLEASE TAKE NOTICE that on April 28 , 2008,  I have mailed the
original and two copies of the Petition For Writ of Habeas Corpus
pursuant to 28 USC §2254 to the clerk of the above court for
filing, by depositing the documents in the institutional mail
at the Menard Correctional Center, addressed as indicated above
with authorization for payment of sufficient postage attached.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I
declare under penalty of perjury that I have placed the above
listed documents in the Menard Prison mail system, addressed
as indicated, on the date indicated, with money voucher attached
for payment of sufficient postage, for mailing through the United
States Postal Service. That the information contained on this
Notice Of Filing/Certificate Of Service is true and correct
to the best of my knowledge and belief.

DATE: 4-28-08

Jon Roe Morgan
Reg. No. K-60696
Menard Correctional Center
P.O. Box 711
Menard, IL 62259

Page 2

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

*08-3118*

| United States District Court | District Central Dist. of Illinois |
|---|---|

| Name (under which you were convicted):<br>Jon R. Morgan | Docket or Case No.: |
|---|---|

| Place of Confinement:<br>Menard Correctional Center | Prisoner No.: K-60696 |
|---|---|

Petitioner (include the name under which you were convicted)    Respondent (authorized person having custody of petitioner)

Jon R. Morgan    v.    Donald Hulick, Warden    *FILED*

The Attorney General of the State of

*MAY 2 0 2008*

*CLERK OF THE COURT*
*U.S. DISTRICT COURT*
*CENTRAL DISTRICT OF ILLINOIS*

PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   Circuit Court of the 11th Judicial Circuit of Illinois, Logan
   County Illinois, Courthouse-601 Broadway St. Lincoln, IL 62656

   (b) Criminal docket or case number (if you know): 95-CF-101

2. (a) Date of the judgment of conviction (if you know): September 20, 1996

   (b) Date of sentencing: November 26, 1996

3. Length of sentence: 58 year 1st degree-17 year 2nd degree murder,consecutive

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☒ No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: _____

   First degree murder as to Lila Cearlock, 58 years

   Second degree murder as to Keith Cearlock, 17 years consecutive

   _____

   _____

6. (a) What was your plea? (Check one)

   (1)    Not guilty ☒    (3)    Nolo contendere (no contest) ☐

   (2)    Guilty ☐    (4)    Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or
   charge, what did you plead guilty to and what did you plead not guilty to?_____

   _____

   _____

   _____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

    Jury ☒     Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    Yes ☒  No ☐

8.  Did you appeal from the judgment of conviction?

    Yes ☒  No ☐

9.  If you did appeal, answer the following:

    (a) Name of court: Illinois Appellate Court, Fourth Judicial District

    (b) Docket or case number (if you know): 4-96-0996

    (c) Result: 2nd degree murder conviction affirmed, New trial ordered on 1st degree murder conviction

    (d) Date of result (if you know): September 29, 1999

    (e) Citation to the case (if you know): 307 Ill.App.3d 707, 718 NE2d 206, 240 Ill. Dec. 725

    (f) Grounds raised: (1) Trial court abused its discretion in transfering case to adult court. (2) Trial court violated Jon Morgan's Miranda rights by allowing use of initial statements; (3) Jon Morgan's confession was not voluntary; (4) Jon Morgan did not knowingly and intelligently waive his Miranda rights; (5) Trial court abused its discretion in excluding testimony of victims prior violent conduct; (6) Trial court denied Jon Morgan a fair trial by refusing to give second degree murder instructions on the felony murder counts; (7) Trial Court erred in not dismissing the felony murder counts.

(g) Did you seek further review by a higher state court?    Yes ☒ No ☐

If yes, answer the following:

(1) Name of court: Illinois Supreme Court

(2) Docket or case number (if you know): 88508, 88513 consolidated

(3) Result: Fourth District Appellate Court's New trial order reversed

(4) Date of result (if you know): October 18, 2001

(5) Citation to the case (if you know): 197 Ill.2d 404, 758 NE2d 813

(6) Grounds raised: By appeal and cross appeal same as in the Fourth District Appellate Court

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐ No ☒

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☒  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Circuit Court of Logan County, Illinois

(2) Docket or case number (if you know): 95-CF-101

(3) Date of filing (if you know): June 26, 2002

(4) Nature of the proceeding: 725 ILCS 5/122-1 Post Conviction Relief Petition

(5) Grounds raised: (1) Defendant denied right to counsel when subjected to custodial interrogation; (2) Defendant denied effective assistance of trial and appellate counsel; (3) Defendant denied right to present evidence in his defense; (4) Consecutive sentences violated defendant's constitutional rights; (5) Defendant denied due process of law by combined errors at trial and on appeal.

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❑    No ☒

(7) Result: <u>Post-Conviction Petition denied at 2nd stage</u>

(8) Date of result (if you know): <u>January 5, 2005</u>

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❑    No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❑    No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:    Yes ☒    No ❑

(2)  Second petition:    Yes ❑    No ❑

(3)  Third petition:    Yes ❑    No ❑

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND ONE:** Petitioner, Jon Morgan was denied his Fifth Amendment right against self-incrimination when he was subjected to custodial interrogation without <u>Miranda</u> warnings.

(a) <u>Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.)</u>:

As the Illinois Supreme Court observed "it is clear from the record that Jon Morgan had suffered a tragic life and been failed by his parents and grandparents." <u>People-v-Morgan</u>, 197 Ill.2d 404, 430 (2001). Jon Morgan spent his childhood alternating between his mother's home, where he endured neglect and physical abuse (Vol. XXIV, R 535; Vol XXXI, R 706-09), and the home of his maternal garndparents, Keith and Lila Cearlock, a fundamentalist couple with a troubled relationship who removed Jon from his prescribed psychotropic medication and relied instead on screaming, grounding, and beatings with a razor strap three to four times a week to control behavior such as "being hyper," having trouble with homework, playing with children outside the church, or watching television. (Vol. xxIV, R 535; Vol. XXVI R 848, 862, 887; Vol. XXXI, R 706-09,

713-18, 723, 728-29, 756) On April 27, 1995, when Jon Morgan
was fourteen years old, he shot and killed his grandparents.
(Vol. XXIII, R 442, 450, 454)

What transpired the night of the shootings was gleaned
from Jon Morgan's pre-trial statements to police and trial
testimony. According to Jon, after he and the Cearlocks argued
about detentions Jon had received for tardiness at school,
Keith Cearlock beat him on the buttocks with a razor strap.
(Vol. XXIV, R 525-26, Vol. XXXI R 781-85). When Keith Cearlock
swung his fist at Jon for responding to denigrating comments
about Jon and his mother, Jon retrieved a gun and ammunition
from his grandfather's closet and returned to the bathroom
with thoughts of killing himself, but instead shot a Tilex
bottle sitting on the bathtub. (Vol. XXIV, R 527-28, Vol XXXI,
R 785-91, 849). When Jon emerged from the bathroom moments
later, an angry Mr. Cearlock rounded the corner of the hallway
and Jon Morgan shot him. (Vol. XXIV, R 529; Vol. XXXI, R 791-
92, 794). According to Jon, he was afraid his grandfather would
kill him. (Vol. XXXI R 793-94). Jon Morgan shot Mrs. Cearlock
in the back seconds later as she ran from the house, then followed
her to the front yard and according to witnesses, tried to
shoot her again as she lay on the ground. (Vol. XXII, R 310;
Vol. XXIII, R 337-38; Vol. XXIV, R 530, 539; Vol XXXI, R 794-97).

After walking to a friend's house only to discover that
he was not home, Jon Morgan decided to return to his grandparents
house and surrender to the police. (Vol. VI, r 55) Jon Morgan
surrendered himself to the police 27 minutes after a 9-1-1-

dispatch to the Lincoln Police Department. (Vol. VI, R 123).
Deputy Robert Spickard was in the yard at 1206 7th Street when
Jon Morgan approached him holding a pistol and box of bullets.
(Vol. VII, R 329). Jon handed the gun and bullets to Deputy
Spickard. (Vol. VII, R 329). While doing so, Jon told Deputy
Spickard, "I did it. I killed them." (Vol. VII, R 330). Deputy
Spickard walked Jon Morgan over to dectective Harberts who
was leading the investigation.

   After Deputy Spickard explained to Dectective Harberts what
Jon Morgan had told him, Dectective Harberts--without advising
Jon Morgan of his rights pursuant to Miranda-v-Arizona--asked
Jon Morgan, a 14 year old juvenile, why he shot his grandparents.
Jon Morgan replied, "Because they pissed me off. I couldn't
take it anymore so I shot them." (Vol. VI, 28).

   Once Deputy Spickard had told Detective Harberts what Jon
Morgan had said, the investigation obviously focused on Jon
Morgan's conduct in the shootings. Given Detective Harberts'
knowledge that Jon Morgan had admitted involvement in the shootings,
his question went beyond the boundaries of general, on the
scene questioning. Detective Harberts specific question, "Why
did you do it?" directly called for an answer of a testimonial
nature as to Jon Morgan's motive for shooting his grandparents.
The question was designed to elicit an incriminating response.
As this interrogation was conducted prior to Jon Morgan being
advised of his rights as required by Miranda-v-Arizona all
statements obtained as a result of the question must be suppressed.

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

(c) Direct Appeal of Ground One:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

       Yes ☒   No ☐

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

_____

(d) Post-Conviction Proceedings:

    (1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

       state trial court?                Yes ☐   No ☐

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion or petition?

       Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion or petition?

       Yes ☐   No ☐

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

       Yes ☐   No ☐

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

    issue: _____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:**    Due to the coercive nature of 14 year old juvenile Jon Morgan's encounter with police the statements made in police custody were not voluntary and violated the Fifth Amendment right against self-incrimination.

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

A multitude of factors compel the conclusion that the trial court's ruling that 14 year old Jon Morgan's statements to police were voluntary is against the manifest weight of the evidence and an unreasonable application of the law.

Jon Morgan returned from his friend's house looking for police officers that he believed would help him. He felt confused and hopeless. Jon was examined for fitness to stand trial by Dr. Robert Chapman. After Dr. Chapman reviewed the video and listened to the audiotape made by the police on April 27, 1995, he concluded that Jon showed signs of despair. In clinical and forensic psychiatry, despair is a mental state and emotion that implies that the person has a profound feeling of helplessness and hopelessness. Dr. Chapman was struck by what appeared to be a sense of despair and hopelessness and fruitlessness of Jon's life in the situation he had found himself in.

After handing the gun to Deputy Spickard and admitting

involvement in the shooting, Jon was confronted by a gruop of police officers including Detective Harberts. Detective Harberts demanded to know why Jon shot his grandparents. In Jon's mind, he had no choice but to answer the question because these officers were authority figures. Throughout his life, Jon Morgan had learned the hard way that there were negative consequences when he did not follow authority.

After Jon Morgan answered Detective Harberts' question, he was handcuffed and placed in a police car. He sat in the police car, confused and helpless, waiting for the officers to tell him what to do. Jon was directed out of the car  and into the yard where he was subjected to grossly coercive and unnecessary identification procedures. He was the only person in the yard without a uniform other than Detective Harberts. There were four to five marked squad cars with emergency lights flashing and reflecting off the house. Those squad cars also had their headlights and spotlights shinning. Persons from the neighborhood had gathered along the police tape line. Jon Morgan was hadcuffed and a neighbor was asked to identify him. Jon was then directed by Detective Harberts to stand over a pool of blood on the ground. The handcuffs were removed while the witness attempted to identify him from across the street. He was handcuffed again, placed in a squad car and taken to jail. As the squad car drove away, Jon felt confused by the police lights, the onlookers and the situation. He felt his life  was over.

At the jail Jon was confined in a cell ordinarily used for the confinement of adult prisoners. Jon Morgan was taken into custody shortly after 8:30 p.m. He was in a cell, still handcuffed by 9:00 p.m. Shortly after 9:00 p.m., Detective Harberts learned that Jon Morgan was 14 years old. Armed with this knowledge Detective Harberts did not attempt to contact Jon Morgan's parents, even though Jon provided his mother's name and phone number. Detective Harberts did not call the Lincoln Police Department juvenile police officer. What Detective Harberts did do was read Jon Morgan his <u>Miranda</u> warnings and interrogate Jon from shorly after 9:00 p.m., until 9:37 p.m.

Detective Harberts waited an hour and a half before even attempting to contact Jon Morgan's mother. When he did, he simply stated his name and that Jon was with him. He failed to mention that her son was in the custody of police, suspected in the double homicide of his grandparents.

Sgt. Darrell Sisk, the juvenile officer for the Lincoln Police Department was called by another police officer at 10:30 p.m. He was home in bed. He was only asked if he knew Jon Morgan. Since he didn't know "this kid," he went back to sleep. Sgt. Sisk was not told that a minor was in custody, suspected of a double homicide. He was not requested to come down to the station and serve the interest of the minor as required by Illinois Juvenile Court Act (705 ILCS 405/1 et. seq.), and by the policy of the Lincoln Police Department.

After Jon Morgan's first interrogation, both Detective Harberts

an Officer Kerns either met with or spoke to the Logan County
State's Attorny or Assistant State's Attorney. No one discussed
whether Jon's parents or Sgt. Sisk had been contacted. The
purpose of their meeting was to determine how to gain more
incriminating evidence against Jon Morgan. Assistant State's
Attorney Kurt Schoenbein suggested that a video re-enactment
of the crime be done. In the early hours of the morning the
police went to Jon Morgan's jail cell and asked him to do the
re-enactment. Jon agreed.

When Jon Morgan's mother, Glenda Ashworth, called the Lincoln
Police Department and spoke to Detective Harberts, she demonstrated
great interest in her son's welfare. She made Detective Harberts
aware of Jon's attention deficit disorder and wanted Jon to
have an attorney.

The action of the police in subjecting Jon Morgan, a 14
year old, to the same interrogation as an adult, without any
special regard for his youth, combined with the violation of
both the Illinois Junvenile Court Act and the Lincoln Police
Department juvenile policy, render Jon Morgan's statements
involuntary. Further, if the police had contacted Jon Morgan's
mother before any interrogation Jon would have had a Public
Defender to represent his interest and  protect his rights.
All of Jon Morgan's statements must be suppressed.

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

(c)  **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒   No ☐

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☐   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____

_____

_____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative

remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____


**GROUND THREE:**    Petitioner, Jon Morgan did not knowingly and
intelligently waive his <u>Miranda</u> rights, therefore his statements
to police violated his Fifth Amendment right against self-
incrimination.

(a)  <u>Supporting facts (Do not argue or cite law. Just state
the specific facts that support your claim.):</u>

After being transported to the Logan County Jail, Jon Morgan,
who was 14 years old, was confined in a jail cell which was
ordinarily used for the confinement of adults. As noted above,
he was handcuffed when transported to the jail and initially
remained cuffed even after being placed in the cell. Detective
Harberts testified that Jon Morgan acted in a non-violent,
passive way, never making any effort to escape. Officer Kerns,
who placed Jon in handcuffs at the scene testified that Jon
was compliant with every request.

The obvious intent of the handcuffs was to intimidate and
coere Jon Morgan into co-operating with the wishes of the police.

This is especially evident for a minor such as Jon Morgan who had never been arrested, let alone inside of a locked jail cell. Therefore, when Detective Harberts directed Jon Morgan out of the cell into an office, Jon was more than happy to comply. In Jon's mind, the company of Detective Harberts was far better than the locked jail cell.

Shortly after 9:00 p.m., Detective Harberts read <u>Miranda</u> warnings to Jon Morgan no differently than if Jon were an adult. He made no effort to explain the warnings or the consequences of waiving any of the stated rights. Jon Morgan was asked if he understood each warning, but he was never asked if he waived or gave up his right to remain silent, his right to consult with counsel, or his right to appointed counsel. Jon Morgan was not asked to sign a written waiver indicating an understanding of these rights. At the end of the warnings, Jon Morgan was simply asked, "Do you want to talk to me without having a lawyer present?"

In his seventh grade social studies class Jon Morgan learned that, "A policeman is your friend. A policeman must have a servant's heart. He is a minister of God, in the community they are looked upon as leaders and are respected." (Supp. R. Vol. IV,, People's Ex. 16, p. 23). Given Jon Morgan's age, experience and background, and given the coercive circumstance of his interrogations, Jon Morgan did not understand the consequences of talking to the police and did not knowingly and intelligently waive his right not to talk to the police.

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c)  Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒  No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?            Yes ☐   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☐   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

(e)  Other Remedies: Describe any other procedures (such as habeas corpus, administrative
     remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____
     _____
     _____


**GROUND FOUR:**  Petitioner, Jon Morgan was denied his Fourteenth
Amendment right to Due Process and a Fair Trial and his Sixth
Amendment right to present a defense when the trial court
excluded testimony of Glenda Ashworth and Dr. Stuart Hart
regarding the prior violent conduct of the victims Keith and
Lila Cearlock.


(a)  Supporting facts (Do not argue or cite law. Just state
     the specific facts that support your claim.):

In the trial of this case Jon Morgan did not deny that the
shootings took place. He testified that he acted in self-defense,
based on fear, that he needed to protect himself from great
bodily harm. Jon testified that he believed it was necessary
to defend himself that night as the result of years of beatings
and emotional abuse and an escalating pattern of violence in
the weeks before the shootings, which included beatings by
his grandfather with his fist and threats that if he ever fought
back his grandfather would get him in his sleep. (Supp. R.
Vol. II, Resp. Ex. No 2, p. 5)(Vol. I, R 146) In addition to
the beatings by his grandfather, his grandmother, Lila Cearlock
often hit him with her fist, handles of scissors or would
backhand him or hit him with whatever she may have in her hand.

(Supp. R. Vol. II, Resp. Ex. No. 2, p 6; Vol. VI, R 220).

The defense intended to call, Glenda Ashworth, Jon Morgan's
mother, to testify to the physical and emotional abuse suffered
by her at the hands of her parents, Keith and Lila Cearlock.
The trial judge granted the State's motion to bar this testimony
from the trial. An offer of proof was made.

Glenda Ashworth testified, in her offer of proof, to specific
details of her upbringing and her beatings by her parents.
She testified that nearly every beating started with the exhortations
of her mother and that her father's rage was always incited
by her mother. She testified that her father had a particular
leather strap that he used to administer the beatings. She further
related that her father had a peculiar method of administering
a closed-fist punch. This involved the extension of the knuckle
of the middle finger which turned the fist into a pointed wedge.
The similarities between Glenda Ashworth's experiences and
Jon Morgan's were eerie. Jon's beatings also started with the
insistence of Lila Cearlock, the razor strap was still liberally
employed and the extended knuckle punch was still a favorite
of Keith Cearlock.

The defense also attempted to introduce testimony of Dr.
Stuart Hart. Dr. Hart was a psychologist testifying on Jon
Morgan's behalf. In the course of his examination of Jon Morgan,
Dr. Hart spoke with Glenda Ashworth. The State moved to exclude
any testimony regarding that conversation and regarding the
purpose of that conversation with Glenda Ashworth. The trial

judge excluded the testimony.

In an offer of proof, Dr. Hart explained that he felt that, as a professional, it was necessary that he interview Glenda Ashworth to support his opinion about Jon. (Vol. XXVI, R 451-452). Dr. Hart testified that parental physical abuse is often "cross generational." (Vol. XXVI, R 454). By this phrase, Dr. Hart explained that abuse by parents of their child will lead to abuse by the child of her own children. This recognized phenomenon also meant that "patterns" of abuse were not easily overcome and that, if the abuser is again put into a caretaker role, he is likely to repeat his abuse. (Vol. XXVI, R 455). Dr. Hart felt that Glenda Ashworth's experiences would have been "reasonably relied upon by experts in the particular field in forming opinions."

Through his conversation with Glenda Ashworth, Dr. Hart was able to corroborate many of the experiences testified to by Jon Morgan. The abuse suffered by Glenda Ashworth confirmed in Dr. Hart's mind that Jon had indeed suffered the same type of abuse. In Dr. Hart's words, Glenda Ashworth's information confirmed a "repetitive and persistent pattern" of severe mental, emotional and physical abuse. (Vol. XXVI, R 453-454). Glenda Ashworth's information also gave Dr. Hart a better understanding of Jon's psyche. Glenda Ashworth's experiences gave important insight into Jon's early developmental experiences and home life as a young child. This information was crucial to Dr. Hart's testimony regarding Jon Morgan's perception of the threat

he felt on the day of the shootings.

The defense was not trying to prove that on the day of the shootings, Jon Morgan's grandparents had acted in exact conformity with thier actions towards Glenda Ashworth. Rather, Jon Morgan was trying to prove that he had been similarly mistreated and that his testimony of fear should be believed. He was not trying to convince the jury that his grandparents were criminals, but rather to convince the jury that he had not made up the stories of his repeated abuse at the hands of his grandparents. The information obtained from Glenda Ashworth was important to Dr. Hart and the jury in two ways. One it corroborated and supported Jon Morgan's version of the crucial and operative facts of his own abuse. Second, it provided important diagnostic insights into Jon Morgan's psychological make up. Both the corroborative component and the diagnostic component were equally important to the jury's understanding of Jon Morgan's perceptions and claims of self-defense.

The key element in Jon Morgan's self-defense claim is that he believed that his life and safety were in imminent danger. Therefore, he had to introduce evidence that it was reasonable for him to believe that his safety was in inmminent danger at the hands of his grandparents. Therefore, any evidence which tended to make that fear more probable in the jury's mind was vital to Jon Morgan's defense. Jon Morgan's testimony regarding the events leading up to the shootings, had they been believed by the jury, were sufficient to support a self-defense finding.

Any and all corroboration of those events was crucial to his
case. Glenda Ashworth's testimony would have gone a long way
towards having the jury believe Jon Morgan's perceptions. Her
testimony would not only corroborated the truth of Jon's stories
of past beatings, but more importantly, would have corroborated
Jon's feelings of fear and panic. Without Glenda Ashworth's
testimony, Jon Morgan's claims appear as self-serving and unreliable.
With Glenda Ashworth's testimony, the jury could not so easily
discount Jon Morgan's defense. The exclusion of Glenda Ashworth's
testimony and Dr. Hart's testimony concerning Glenda Ashworth
violated Jon Morgan's right to present a defense and denied
Jon Morgan a fair and reliable trial.

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____
_____

(c) Direct Appeal of Ground·Four:

   (1) If you appealed from the judgment of conviction, did you raise this issue?
   Yes ☒   No ☐
   (2) If you did not raise this issue in your direct appeal, explain why: _____
   _____

(d) Post-Conviction Proceedings:

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
   state trial court?        Yes ☐ No ☐
   (2) If your answer to Question (d)(1) is "Yes," state:
   Type of motion or petition: _____
   Name and location of the court where the motion or petition was filed: _____
   _____
   Docket or case number (if you know): _____
   Date of the court's decision: _____
   Result (attach a copy of the court's opinion or order, if available): _____
   _____
   _____

(3) Did you receive a hearing on your motion or petition?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion or petition?

    Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative

    remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

    _____


**GROUND FIVE:** Petitioner, Jon Morgan was denied his Fourteenth

Amendment right to Due Process and a Fair Trial where the trial

court refused to give the jury second degree murder instructions

as to the felony murder counts.


(a) <u>Supporting facts (Do not argue or cite law. Just state</u>
    <u>the specific facts that support your claim.)</u>:

The State charged Jon Morgan with eight counts of first degree

murder in relation to the death of his grandparents. Counts

I and II charge Jon Morgan pursuant to 720 ILCS 5/9-1(a)(1)
with causing the death of his grandmother and grandfather respectively
with intent to kill them. Counts III and IV charge Jon pursuant
to 720 ILCS 5/9-1(a)(2) with causing the death of his grandmother
and grandfather by shooting them knowing such act created a
strong probability of death or great bodily harm. Counts V
and VI charge Jon pursuant to 720 ILCS 5/9-1(a)(3) with causing
the death of his grandmother and grandfather while committing
the forcible felony of aggravated battery in that while committing
a battery, Jon Morgan intentionally or knowingly caused great
bodily harm and that during the commission of the aggravated
battery, Jon Morgan's grandparents died. Counts VII and VIII
charge Jon pursuant to 720 ILCS 5/9-1(a)(3) with causing the
death of his grandmother and grandfather while committing the
forcible felony of aggravated discharge of a firearm in that
he knowingly discharged a firearm in the direction of his
grandmother and grandfather.

Defense counsel disclosed its intent to use a psychological
defense and expert testimony to demonstrate that Jon Morgan's
actions in shooting his grandparents were based upon self-defense
or the result of sudden and intense passion resulting from
serious provocation. (C 248)  During the jury instruction conference,
the trial judge refused to give a second degree murder instruction
for counts V through VIII, the felony murder counts. (Vol.
XXIX, R 25-42).

At trial Jon Morgan produced evidence that he killed his

grandparents because he believed the killings were necessary
to save his own life. If the jury believed that Jon reasonably
believed his use of deadly force was necessary to protect his
own life, they could have aquitted him of first degree murder.
If the jury believed Jon Morgan believed it was necessary to
kill his grandparents in order to protect himself, but that
belief was unreasonable, the jury could convict him of second
degree murder.

In Illinois second degree murder is simply first degree
murder plus mitigation. If a defendant is charged with first
degree murder and presents the defense of provocation the jury
must decide; (1) whether the State proved all the elements
of first degree murder, and if so (2) whether the mitigating
factor of serious provocation was present at the time of the
murder. If the jury finds that serious provocation was present,
then the defendant is guilty of second degree murder. However,
if the jury determines that serious provocation was not present,
the defendant is guilty of first degree murder. A jury must
find either "provoked" second degree murder or "unprovoked"
first degree murder. A single murder cannot be both provoked
and unprovoked at the same time.

If the jury found that Jon Morgan acted upon an unreasonable
belief of self-defense, they would have necessarily found that
he did not form any criminal intent until he determined that
he had to kill his grandparents to defend himself. It was at
that particular point in time, when Jon Morgan formed the

intent to commit aggravated battery and aggravated discharge
of a firearm. Anytime a defendant commits second degree murder
based on an unreasonable belief of self-defense, the defendant
will thereon possess the intent or knowledge necessary for
a conviction on aggravated battery causing great bodily harm.
The same is true for aggravated discharge of a firearm if the
second degree murder is committed by shooting the victim.

Jon Morgan's intent to commit the felonies of aggravated
battery and aggravated discharge of a firearm was not formed
until after Jon formed his belief that deadly force was necessary
to protect his life. Without a second degree murder instruction
on the felony murder counts, if Jon Morgan were found guilty
of second degree murder on counts I through IV, the jury would
still necessarily have to find Jon Morgan guilty of first degree
felony murder on counts V through VIII, based on the aggravated
battery and aggravated discharge of a firearm.

In this case, the State nullified the second degree murder
statute. By charging Jon Morgan with felony murder based upon
aggravated battery and aggravated discharge of a firearm--two
felonies that are always present when a defendant shoots someone-
-and then arguing that Jon Morgan is not entitled to a second
degree murder instruction on the felony murder counts, the
State effectively eliminated the application of Jon Morgan's
defense. Jon Morgan is entitled to second degree murder instructions
on all of the felony murder counts. The trial court's refusal
to tender the second degree murder instructions on the felony

murder counts denied Jon Morgan a fair trial and due process
of law and the right to present a lesser included defense.

(b) If you did not exhaust your state remedies on Ground Five,
     explain why;

(c) **Direct Appeal of Ground Five:**
     (1) If you appealed from the judgment of conviction, did
          you raise this issue?
               Yes [X]    No  [ ]
     (2) If you did not raise this issue in your direct appeal,
          explain why: _____

(d) **Post-Conviction Proceedings:**
     (1) Did you raise this issue through a post-conviction
          motion or petition for habeas corpus in a state trial
          court?
               Yes [ ]    No [ ]
     (2) If your answer to Question (d)(1) is "Yes," state:
     Type of motion or petition: _____
     Name and location of the court where the motion or petition
     was filed: _____
     Docket or case number (if you know); _____
     Date of the court's decision: _____
     Result (attach a copy of the court's opinion or order, if
     available): _____
     (3) Did you receive a hearing on your motion or petition?
               Yes [ ]    No [ ]
     (4) Did you appeal from the denial of your motion or petition?
               Yes [ ]    No [ ]
     (5) If your answer to Question (d)(4) is "Yes," did you
          raise this issue in the appeal?
               Yes [ ]    No [ ]
     (6) If you answer to Question (d)(4) is "Yes," state:
          Name and location of the court where the appeal was filed:

          _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if
available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is
    "No," explain why you did not raise this issue:_____

_____

(e) **Other Remedies:** Decribe any other procedures (such as habeas
    corpus, administrative remedies, etc.) that you have used
    to exhaust your state remedies on Ground Five: _____

_____

**GROUND SIX:** Petitioner, Jon Morgan was denied his Fourteenth
Amendment right to Due Process and a Fair Trial where the trial
Court refused to dismiss the felony murder counts based on
the predicate felonies of aggravated battery and aggravated
discharge of a firearm as these predicate felonies merged with
the homicides and could not support felony murder charges.


(a) <u>Supporting facts (Do not argue or cite law. Just state
    the specific facts that support your claim)</u>:

Prior to trial defense counsel filed a motion to dismiss the

felony murder counts on the grounds that the predicate felony

charges--aggravated battery and aggravated discharge of a firearm-

- merged with the homicides and could not be used to support

a felony murder charge. (C 318) Defense counsel argued that

the state improperly charged felony murder in order to deprive

Jon Morgan of a second degree murder defense. (C 325) That

motion was denied. (C 30)

At trial the State made clear its theory that Jon Morgan intentionally killed his grandmother and grandfather. In any case where the defendant is charged with intentionally killing a victim, or engaging in acts which the defendant knows will create a strong probability of death or great bodily harm, the defendant, by implication, is charged with aggravated battery. Aggravated battery is defined as committing a battery intentionally or knowingly without legal justification and by any means, causing bodily harm to an individual and intentionally or knowingly causing great bodily harm, or permanent disability or disfigurement. It is impossible to intentionally kill someone or engage in conduct knowing the conduct creates a strong probability of death or great bodily harm and that conduct actually kills a victim, and not commit the offense of aggravated battery. If a defendant intentionally kills a victim or kills a victim while engaging in acts he knows creates the strong probability of death or great bodily harm then the defendant has intentionally or knowingly caused great bodily harm while committing a battery. Thus, in any first degree murder case, charging the defendant with intentionally killing the victim or engaging in conduct knowing the conduct creates a strong probability of death or grat bodily harm, it is possible to charge the defendant with aggravated battery.

By the same token, if a defendant is charged with intentionally killing a victim by shooting the victim with a firearm, then by definition, the defendant is charged with aggravated discharge

of a firearm. Aggravated discharge of a firearm is defined
as knowingly or intentionally discharging a firearm in the
direction of another person. (720 ILCS 5/24-1.2(a)(2)). It
is impossible to kill someone by shooting them and not have
discharged a firearm in the victim's direction. Thus, any defendant
who is charged with first degree murder by shooting the victim
can be charged with aggravated discharge of a firearm.

Under Illinois felon-murder rule, the defendant can be convicted
of first degree murder without the State having to prove any
intent to kill. Rather, the State need only prove that the
defendant was attempting to commit or was committing a forcible
felony and while the defendant was attempting to commit or
committing the forcible felony, someone was killed.

If the State's theory of the case is believed, then Jon
Morgan intentionally killed his grandmother and grandfather.
If Jon Morgan's theory of the case is believed, Jon intentionally
killed his grandparents in self-defense or while he was acting
under a sudden and intense passion. Either way, Jon Morgan
intended to kill his grandparents. As discussed above, for
Jon Morgan to kill his grandparents by shooting them, he necessarily
had to commit the forcible felonies of aggravated battery and
aggravated discharge of a firearm. Jon Morgan had to commit
the forcible felonies to effectuate his intent to kill his
grandparents in order to defend himself.

Absent the giving of a second degree murder instruction,
charging felony murder in this fashion will allow the State

to achieve a conviction of first degree murder without ever having to prove an intent to kill. Furthermore, if the State is allowed to charge felony murder based on aggravated battery and aggravated discharge of a firearm when those felonies are not independant of the homicide, the State will be able to charge felony murder in every homicide case and, therefore, never have to prove intent to kill to achieve a conviction of first degree murder.

By charging felony murder in this manner, the State was able to argue that Jon Morgan is not entitled to a second degree murder instruction on the felony murder counts. The State deliberately charged Jon Morgan in this manner to deprive him of his constitutional right to present a second degree murder defense, a defense specifically provided by the Illinois legislature. This worked to deprive Jon Morgan of due process of law and a fair trial.

(b) If you did not exhaust your state remedies on Ground Six,
    explain why: _____

(c) **Direct Appeal of Ground Six:**
    (1) If you appealed from the judgment of conviction, did
        you raise this issue?
           Yes [X]    No [ ]
    (2) If you did <u>not</u> raise this issue in your direct appeal,
        explain why:_____

(d) **Post-Conviction Proceedings:**
    (1) Did you raise this issue through a post-conviction motion
        or petition for habeas corpus in a state trial court?
        Yes [ ]      No [ ]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition
was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if
available): _____

(3) Did you receive a hearing on your motion or petition?
    Yes [ ]    No [ ]

(4) Did you appeal from the denial of your motion or petition?
    Yes [ ]    No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you
    raise this issue in the appeal?
    Yes [ ]    No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

    Docket or case number (if you know): _____

Date of the court's decision: _____

  Result (attach a copy of the court's opinion or order, if
available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is
"No," explain why you did not raise this issue: _____

_____

(e) **Other Remedies:** Describe any other procedures (such as
    habeas corpus, administrative remedies, etc.) that you
    have used to exhaust your state remedies on Ground Six:

_____

**GROUND SEVEN:** Petitioner, Jon Morgan was denied his Sixth
Amendent right to the effective assistance of trial and direct
appeal counsel as the same counsel represented him both at
trial and on direct appeal and counsel failed to preserve and

raise the issue that Jon Morgan's consecutive sentences were
not authorized by law.

(a) Supporting facts (Do not argue or cite law. Just state
    the specific facts that support your claim.):

Jon Morgan was convicted of first and second degree murder
based on shootings of his grandparents, Keith and Lila Cearlock.
(Vol. I, C 42-43)  Jon Morgan was subject to mandatory consecutiive
sentencing if those offenses were committed as part of a single
course of conduct during which there was no substantial change
in the nature of the criminal objective pursuant to 730 ILCS
5/5-8-4(a)(West 1995). If the offenses were not committed as
part of a single course of conduct, consecutive sentencing was
permissible only    if the trial court made an express finding
that such a sentencing was necessary to protect the public,
pursuant to 730 ILCS 5/5-8-4(b)(West 1995). Both the prosecutor
and defense counsel as well as the trial court proceeded as
if the two offenses were part of a single course of conduct.
The prosecutor asserted that consecutive sentences were mandatory
because the shootings arose out of a single course of conduct
and defense counsel implicitly accepted  that assertion but
argued that the triggering factor of serious bodily harm was
inherent in second degree murder and thus constituted an improper
double enhancement. (Vol. V, C 1130-32; Vol. XXX, R 169-70,
190-91, 203)  Without an express finding of a single course
of conduct, and mentioning only deterrence of others in aggravation

the court imposed consecutive sentences of 58 years for first degree murder and 17 years for second degree murder. (Vol. XXX, R 213)

Despite the assumptions of the attorneys and the trial court, the jury verdict established that the two shootings were not committed as part of a  single course of conduct. The defense theory at trial was that Jon Morgan shot both of his grandparents out of fear that he would be beaten or even killed for having discharged a gun in the house. The State's theory was that Jon Morgan shot his grandparents out of anger. (Vol. XXVIII, R 164-65, 168, 198-99, 229-30, 279-80)  By returning a guilty verdict of second degree murder as to Keith Cearlock (Vol. IV, C 979), the jury determine that the first shooting was motivated by an unreasonable belief in the need for self-defense. The jury rejected the notion that Jon Morgan's criminal objective remained the same by the time he shot his grandmother, as evidenced by the verdict of first degree murder for the shooting of Lila Cearlock. (Vol. IV, C 980)  Because Jon Morgan's criminal objective changed after the initial shooting of his grandfather, he therefore was <u>not</u> eligible for mandatory consecutive sentences under subsection (a) of Section 5-8-4. Nor was Jon Morgan subject to discretionary consecutive sentencing under subsection (b) of Section 5-8-4, given that the trial court did not make the predicate finding that such a sentence was necessary to protect the public, but instead found only deterrence of others as a factor in aggravation. (Vol. XXX, 213)

Jon Morgan's trial attorney Peter Wise, provided ineffective assistance of counsel for failing to identify and preserve the consecutive sentences issue for appeal. The same attorney, Peter Wise, represented Jon Morgan on direct appeal and provided ineffective assistance of counsel on direct appeal by not recognizing and raising the consecutive sentences issue on direct appeal.

Counsel has a constitutional duty to investigate both the facts of a case and the law that applies to those facts. This included the law that would apply to the sentence to be imposed. Jon Morgan had a clearly meritorious consecutive sentencing issue at his disposal, yet the attorney who represented him at trial and on direct appeal failed to raise the issue. That is constitutionally deficient representation. Had this issue been properly preserved and raised there is a reasonable probability the result of Jon Morgan's appeal would have been remanded for re-sentencing. The prejudice to Jon Morgan of up to 17 additional years in prison is substantial. This court should order a new sentencing hearing.


(b) If you did not exhaust your state remedies on Ground Seven, explain why: _____
(c) **Direct Appeal of Ground Seven:**
    (1) If you appealed from the judgment of conviction, did you raise this issue?
        Yes [ ]    No [X]
    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:  <u>ineffective assistance of counel</u>

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes [X]        No [ ]

(2) If your answer to Question (d)(1) is "Yes," State:

Type of motion or petition"  725 ILCS 5/122-1 Petition For Post-Conviction Relief

Name and location of the court where the motion or petition was filed:  Circuit Court of Logan County, Lincoln, Illinois

Docket or case number (if you know):  95-CF-101

Date of court's decision:  January 5, 2005

Rusult (attach a copy of the court's opinion or order, if available):  725 ILCS 5/122-1 Post Conviction Petition denied

(3) Did you receive a hearing on your motion or petition?

Yes [ ]        No [X]

(4) Did you appeal from the denial of your motion or petition?

Yes [X]        No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes [X]        No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
Illinois Fourth District Appellate Court, 201 W. Monroe St Springfield, Illinois 62704

Docket or case number (if you know):  4-05-0009

Date of court's decision:  November 6, 2007

Rusult (attach a copy of the court's opinion or order, if available):  Circuit Court denial of 725 ILCS 5/122-1 Post-Conviction Petition affirmed

(7) If you answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:_____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, ect.) that you have used to exhaust your state remedies on Ground Seven:  Petition For Leave To Appeal to the Illinois Supreme Court from the denial of Post-Conviction Relief. Illinois Supreme Court denied PLA on January 30, 2008, Case No. 105718.

13. Please answer these additional questions about the petition you are filing:

(a) Have all the grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

    Yes [X]    No [ ]

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

    Yes [ ]    No [X]

If "Yes," state the name and location of the court, the docket or case number, the type of

proceeding, the issues raised, the date of the court's decision, and the result for each petition,

application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either

state or federal, for the judgment you are challenging?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of

proceeding, and the issues raised. _____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following

stages of the judgment you are challenging:

(a) At preliminary hearing: _____

(b) At arraignment and plea: _____

(c) At trial: Peter Wise-Gates, Wise & Schlosser, 1225 S. Sixth St.
Springfield, IL 62703

(d) At sentencing: Peter Wise 1225 S. Sixth St. Springfield, IL

(e) On appeal: Peter Wise 1225 S. Sixth St. Springfield, IL

(f) In any post-conviction proceeding: Patrick Timoney-808 South 2nd St.
Springfield, IL 62704

(g) On appeal from any ruling against you in a post-conviction proceeding: Jacqueline
Bullard, Office State Appellate Defender, 400 W. Monroe St.,
Suite 303, Springfield, IL 62705

17. Do you have any future sentence to serve after you complete the sentence for the judgment that
you are challenging?         Yes ☐    No ☒

3:08-cv-03118-JES    # 1    Page 39 of 41

page 39

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ❑  No ❑

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*  Illinois Supreme Court denied direct appeal on October 18, 2001. Statute of limitations tolled by filing of Petition For Post-Conviction Relief pursuant to 725 ILCS 5/122 filed in circuit court on June 26, 2002. Illinois Supreme Court denial of Post-Conviction appeal on January 30, 2008. Federal Habeas Corpus Petition due by May 30, 2008.

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)  A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

(continued...)

Therefore, petitioner asks that the Court grant the following relief: <u>Appointment of counsel,</u> <u>evidenitary hearing on the ineffective assistance of counsel claim, new trial</u> <u>on first degree murder charge, resentencing on consecutive sentences.</u>

or any other relief to which petitioner may be entitled.

NONE
_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on

_____4-28-08_____ (month, date, year).

Executed (signed) on _April 28, 2008_ (date).

_____
Signature of Petitioner

---

*(...continued)
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

## IN FORMA PAUPERIS DECLARATION

_____

[Insert appropriate court]

* * * * *