## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JON ROE MORGAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  08-3118 |
| | ) | |
| DONALD HULICK, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner Jon Roe Morgan's Petition for Writ of Habeas Corpus (d/e 1) (Petition) pursuant to 28 U.S.C. § 2254.  On September 20, 1996, Morgan was convicted following a jury trial in the Circuit Court of Logan County, Illinois, of the first degree murder of Lila Cearlock and the second degree murder of Keith Cearlock. Morgan was sentenced on November 26, 1996, to consecutive sentences of 58 years imprisonment on the first degree murder charge and 17 years imprisonment on the second degree murder charge.  Morgan, who is currently incarcerated at the Illinois Department of Corrections' Menard

Correctional Center, asks this Court to set aside his first degree murder conviction and his sentence.   Respondent has filed an Answer to the Petition for Writ of Habeas Corpus (d/e 6) (Answer), and Petitioner has filed a Reply to the State's Answer (d/e 14) (Reply).   For the reasons set forth below, the Petition is denied.

BACKGROUND

A.   STATEMENT OF FACTS

Morgan spent his childhood alternating between his mother's home and the home of his maternal grandparents, Keith and Lila Cearlock.   In April 1995, Morgan was living with the Cearlocks.   On the evening of April 27, 1995, Morgan and the Cearlocks began arguing about a detention Morgan had received at school.   Keith Cearlock beat Morgan across the buttocks with a razor strap.   The Cearlocks and Morgan continued yelling at each other, and eventually, according to Morgan, Keith Cearlock swung his fist at Morgan.   Petition, p. 7.   Morgan jumped out of the way and ran into the bathroom.   Morgan then went to Keith Cearlock's closet and retrieved a gun and ammunition.   Morgan returned to the bathroom with thoughts of suicide, but instead shot a Tilex bottle that was sitting on the bathtub.   Morgan emerged from the bathroom moments later to see Lila

screaming and an angry Keith Cearlock rounding the corner of the hallway. Morgan shot Keith.  According to Morgan, he did so because he was afraid that Keith would kill him.

At this point, Lila Cearlock turned and attempted to run out of the house into the front yard.  As she was doing so, Morgan shot her in the back.  Lila made it out the front door, but collapsed on the lawn.  According to witnesses, Morgan followed Lila and tried to shoot her again as she was lying on the ground, but the gun jammed.  Morgan then went back inside the house.  He broke a lock on the door to Lila's room and attempted to find her gun, but he was unable to do so.  Morgan then changed his clothes and left the house, still carrying Keith's gun and a box of bullets.  Morgan walked to a friend's house.

At approximately 8:30 p.m., police officers responded to a report of shots fired at Seventh and Washington Streets in Lincoln, Illinois.  When he arrived at the scene, Officer Tim Kerns observed an elderly woman, later identified as Lila Cearlock, lying face down in the front yard of 1206 Seventh Street, with a gunshot wound in her back.  Kerns then observed an elderly man, later identified as Keith Cearlock, lying on his back inside the house at 1206 Seventh Street, with a gunshot wound to his temple.  Officers

secured the crime scene by placing tape around the perimeter of the house.

After the perimeter had been secured, Deputy Sheriff Bob Spickard saw a young man, later identified as Petitioner Morgan, walk across the grass and through the crime scene tape.  According to Morgan, when he reached his friend's house, he learned that the friend was not home, so Morgan decided to return to the Cearlock's house.  As Morgan approached, Spickard ordered Morgan to stop, but Morgan continued on.  Morgan walked up to Spickard, handed him a gun and a box of bullets, and said, "I did it.  I killed them."  Spickard then took Morgan to the front of the house, where other officers, including Detective Michael Harberts, were standing. Spickard informed Harberts that Morgan had turned over the gun and ammunition and had admitted to killing the Cearlocks.

Harberts then asked Morgan why he shot the Cearlocks.  Morgan replied,"Because they pissed me off.  I couldn't take it anymore so I shot them." Petition, p. 8.  Harberts instructed Officer Kerns to arrest Morgan. Morgan was subsequently handcuffed and placed in a squad car.  He was removed from the squad car two separate times before it left the scene to allow witnesses to identify him.  Eventually, Morgan was transported to the Logan County jail, where officials learned that Morgan was fourteen years

old.  Morgan was locked in a cell where he remained until approximately 9:00 p.m.

Harberts advised Morgan of his <u>Miranda</u> rights and interviewed him from 9:05 p.m. until 9:37 p.m.  Harberts attempted to tape record the interview, but later discovered that the tape had not recorded.  Harberts then interviewed Morgan a second time from 11:07 p.m. until 11:30 p.m. after providing a second round of <u>Miranda</u> warnings.  During the interviews, Morgan told Harberts that the Cearlocks were his grandparents and his legal guardians.  Morgan also repeated and expanded upon the statements that he made to police at the scene of the murders.

B.    <u>PROCEDURAL HISTORY</u>

Morgan was originally charged in juvenile court.  The State filed a petition to have Morgan tried as an adult pursuant to 705 ILCS 405/5-4 (1995), which the juvenile court allowed after a three-day hearing.  Morgan was indicted on eight counts of first degree murder as follows: Count I – first degree murder of Lila Cearlock with intent to kill or do great bodily harm; Count II – first degree murder of Keith Cearlock with intent to kill or do great bodily harm; Count III – first degree murder of Lila Cearlock by knowingly committing an act causing great probability of death or great

bodily harm; Count IV – first degree murder of Keith Cearlock by knowingly committing an act causing great probability of death or great bodily harm; Count V – first degree murder of Lila Cearlock by attempting or committing a forcible felony, namely aggravated battery; Count VI – first degree murder of Keith Cearlock by attempting or committing a forcible felony, namely aggravated battery; Count VII – first degree murder of Lila Cearlock by attempting or committing a forcible felony, namely aggravated discharge of a firearm; and Count VIII – first degree murder of Keith Cearlock by attempting or committing a forcible felony, namely aggravated discharge of a firearm.

Defense counsel filed a motion to suppress the statements Morgan made to police at the crime scene and while in custody.  The motion was denied following a hearing, and the matter proceeded to trial.  Morgan was convicted following a jury trial of the first degree murder of Lila Cearlock and the second degree murder of Keith Cearlock.  Answer, Ex. A, Judgment, dated September 20, 1996.  He was sentenced to consecutive terms of imprisonment totaling seventy-five years.

Morgan appealed his convictions, arguing that:

1.    The trial court erred in allowing the State's motion to transfer

Morgan from juvenile court and try him as an adult;

2.     The trial court erred in admitting Morgan's initial statements to police because they were made during a custodial interrogation without the benefit of <u>Miranda</u> warnings;

3.     Morgan's custodial statements were involuntary due to the coercive nature of the circumstances surrounding the interrogations;

4.     Morgan did not knowingly and intelligently waive his <u>Miranda</u> rights;

5.     The trial court erred in excluding testimony of Morgan's mother Glenda Ashworth and Dr. Stuart Hart regarding prior violent conduct of the Cearlocks;

6.     The trial court erred in refusing to give an instruction on second degree murder as to the felony murder counts; and

7.     The trial court erred in refusing to dismiss the felony murder counts under the doctrine of merger.

<u>Answer</u>, Ex. C.

On September 29, 1999, the appellate court affirmed Morgan's second degree murder conviction and reversed the first degree murder conviction, remanding the matter for a new trial on the first degree murder charge

relating to Lila Cearlock.  <u>Answer</u>, Ex. B.  Both Morgan and the State filed Petitions for Leave to Appeal (PLA) with the Illinois Supreme Court, raising the same issues that were raised in the appellate court.  <u>Answer</u>, Ex. F & G. The Illinois Supreme Court granted the PLAs and consolidated the matter for appeal.  The parties filed briefs, raising the same issues that had been raised in the appellate court.  <u>Answer</u>, Ex. H, I, J, & K.

In an Opinion, dated October 18, 2001, the Illinois Supreme Court affirmed Morgan's second degree murder conviction and reversed the appellate court ruling on the first degree murder of Lila Cearlock.  <u>People v. Morgan</u>, 758 N.E.2d 813 (Ill. 2001).  Thus, the Illinois Supreme Court affirmed the judgment of the trial court.  Morgan did not file a petition for writ of certiorari to the United States Supreme Court.

On June 26, 2002, Morgan, through his court-appointed counsel, filed a state postconviction petition, raising general Constitutional and state law arguments.  <u>Answer</u>, Ex. M.  Counsel noted that the petition was prepared without benefit of the record of trial or appellate proceedings and expressly reserved the right to amend the petition.  Morgan filed an amended state postconviction petition on January 5, 2005.  <u>Answer</u>, Ex. N.  The amended postconviction petition raised the following claims:

1.    Morgan was denied his right to counsel under the Fifth Amendment and the Illinois Constitution in that Morgan, who was a juvenile at the time, was subjected to custodial interrogation without the presence of legal representation, his parent and/or guardian, or a juvenile officer;

2.    Morgan was denied the effective assistance of trial and appellate counsel, in violation of the Sixth Amendment and the Illinois Constitution, in that Morgan was represented by the same counsel at the trial and appellate levels and said counsel failed to preserve issues for appeal at the trial level and failed to raise issues on appeal, including his own ineffective assistance;

3.    Morgan was denied his right to present evidence under the United States Constitution and the Illinois Constitution when he was not allowed to present testimony from Glenda Ashworth and Dr. Stuart Hart regarding the abusive history and character of the Cearlocks;

4.    Morgan was sentenced in violation of the United States Constitution and the Illinois Constitution when he was sentenced to consecutive sentences for offenses that occurred at the same time and arose form the same or a related course of conduct; and

5.      Morgan was denied due process of law as guaranteed by the Fourteenth Amendment and the Illinois Constitution due to the fact that cumulative errors which occurred at trial, at sentencing, and on appeal infected the entire process.

<u>Answer</u>, Ex. N, p. 3.  The trial court dismissed the petitions following a hearing on January 5, 2005.  <u>Answer</u>, Ex. O.

Morgan, through counsel, appealed, arguing: (1) that his consecutive sentences were not authorized under Illinois law and (2) that postconviction counsel provided ineffective assistance.  <u>Answer</u>, Ex. P & R.  The appellate court affirmed the decision of the trial court.  <u>Answer</u>, Ex. S.  Morgan filed a PLA to the Illinois Supreme Court, raising the following issues: (1) Morgan's consecutive sentences were not authorized under Illinois law and (2) postconviction counsel provided ineffective assistance.  <u>Answer</u>, Ex. T. The Illinois Supreme Court denied the PLA on January 30, 2008.  <u>Answer</u>, Ex. U.  Morgan then filed the instant Petition.

<u>ANALYSIS</u>

Morgan raises the following grounds for habeas relief in his Petition:

1.      Morgan was denied his Fifth Amendment right against self-incrimination when he was subjected to custodial interrogation without

10

receiving <u>Miranda</u> warnings;

2.    Morgan's statements to police were involuntary;

3.    Morgan did not knowingly and intelligently waive his <u>Miranda</u> rights;

4.    The decision to exclude the testimony of Glenda Ashworth and Dr. Stuart Hart regarding the Cearlocks' prior violent conduct violated Morgan's right to due process and his right to present a defense;

5.    The trial court's refusal to give the jury second degree murder instructions on the felony murder counts (Counts V through VIII) violated due process;

6.    The trial court's refusal to dismiss the felony murder counts based on the fact that the predicate felonies merged with the homicides and could not support felony murder charges violated due process; and

7.    Counsel at trial and on direct appeal was ineffective in failing to object to consecutive sentences.

<u>Petition</u>, at 6-35.

Before this Court can consider the merits of Morgan's claims, the Court must determine whether any of his claims have been procedurally defaulted.   Morgan must have given the Illinois courts a full and fair

11

opportunity to address each claim through a complete round of Illinois appellate procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). To satisfy this requirement, Morgan must have presented to the state courts both the operative facts and the legal principles that control each claim. Mahaffey v. Schomig, 294 F.3d 907, 915 (7th Cir. 2002).  In addition, a claim is deemed to be procedurally defaulted if the state court rejected the claim on independent and adequate state grounds.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).

Claim 7 is clearly procedurally defaulted.  Morgan asserts that counsel at trial and on direct appeal was ineffective in failing to object to consecutive sentences.  This ineffective assistance argument was not raised on direct appeal.  Morgan arguably raised the issue at the trial level in his amended state postconviction petition.  See Answer, Ex. N, p. 3.  However, Morgan failed to raise the issue in postconviction proceedings before the appellate court or in his postconviction PLA.  See Answer, Ex. P, R, & T.

Respondent asserts that Claims 4, 5, and 6 are also procedurally defaulted.  According to Respondent, Morgan failed to present these claims as federal claims before the state courts.  The Court agrees.

In Claim 4, Morgan asserts that the trial court's decision to exclude

12

testimony from Glenda Ashworth and Dr. Stuart Hart regarding the Cearlocks' prior violent conduct violated his right to due process and his right to present a defense.  Prior to evidence being presented at trial, the State moved to exclude testimony by Glenda Ashworth concerning physical and emotional abuse she suffered as a child at the hands of the Cearlocks. The trial court allowed the request.  Furthermore, during the testimony of one of Morgan's expert witnesses, Dr. Hart, the State objected to any testimony concerning an interview Dr. Hart conducted with Ashworth.  The trial court sustained the objection.   Morgan made an offer of proof concerning the excluded testimony of Ashworth and Dr. Hart.  Ashworth's offer of proof indicated that, beginning around the ages of four to six years old, her parents beat her with a belt or razor strap.  As she grew older, her parents began to beat her with a yardstick, and eventually, with boards. Ashworth stated that almost every beating started with exhortations by Lila that incited Keith into a rage.  Petition, p. 19.  Ashworth indicated that Keith told her that, if she resisted him, he would kill her in her sleep. Ashworth also stated that the Cearlocks constantly put her down and called her stupid.

Dr. Hart's offer of proof indicated that Dr. Hart interviewed Glenda

13

for approximately an hour and forty-five minutes.  According to Dr. Hart, Glenda informed him that, as a child, she suffered physical and psychological mistreatment by the Cearlocks which brought her to the point of considering suicide.  Dr. Hart deemed it significant that the experiences described by Ashworth were very similar to those described by Morgan.

In deciding to exclude Ashworth's testimony, the trial court considered the significant amount of time that had elapsed since Ashworth allegedly suffered abuse and the fact that no one was available to rebut her allegations.  The court found that the proffered testimony lacked indicia of reliability.  The trial court barred Morgan from directly or indirectly bringing in Ashworth's testimony through the testimony of Dr. Hart and rejected Dr. Hart's testimony based on the reasons stated for excluding Ashworth's testimony.  Morgan, however, was allowed to testify about the whippings he experienced and the fact that Keith had threatened to kill Morgan in his sleep if he resisted.

On direct appeal, Morgan asserted that the excluded testimony should have been admitted because it was extremely relevant.  Answer, Ex. C, p. 73-78 & Ex. E, p. 20-21.  The appellate court agreed, holding that the challenged evidence was relevant to a theory of defense and admissible

14

under general rule.  <u>Answer</u>, Ex. B, p. 55-62.  Both sides appealed, raising the same arguments that had been presented to the appellate court.  The Illinois Supreme Court reversed.   <u>Morgan</u>, 758 N.E.2d at 842-44.   The Illinois Supreme Court, citing Illinois law, noted that it was within the trial court's discretion to decide whether evidence is relevant and admissible, and that such a decision should not be reversed absent a clear abuse of discretion.  The Court noted that an abuse of discretion should be found only where the trial court's decision was "'arbitrary, fanciful or unreasonable' or where no reasonable man would take the trial court's view." <u>Id</u>. at 842-43 (citing cases).  The Court noted the general propositions that evidence is considered relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action either more or less probable than it would be without the evidence and that a trial court may reject evidence as irrelevant if the evidence is remote, uncertain or speculative.  Considering all of these factors, the Illinois Supreme Court concluded that Morgan had failed to establish that the decision to exclude the evidence was prejudicial error because the court could not conclude that the ruling was "so arbitrary, fanciful or unreasonable that no reasonable man would take the view adopted by the trial court."  <u>Id</u>. at 843.

As set forth above, the record reveals that Morgan did not present this issue as a federal claim on direct review; he argued relevancy, not due process or Sixth Amendment violations. Both the appellate court and the Illinois Supreme Court decided the issue on state law relevancy grounds. Morgan did raise the issue as a federal claim in his amended state postconviction petition. See Answer, Ex. N, p. 3. However, Morgan failed to raise the issue in postconviction proceedings before the appellate court or in his postconviction PLA. See Answer, Ex. P, R, & T. Thus, Morgan failed to raise the claim through a complete round of Illinois appellate procedures, and it is procedurally defaulted.

In Claim 5, Morgan asserts that the trial court's refusal to give the jury second degree murder instructions on the felony murder counts (Counts V through VIII) violated due process. On direct appeal, Morgan argued that the trial court erred, on state law grounds, in refusing to give a jury instruction on second degree murder on the felony murder counts. Answer, Ex. C, p. 78-88; Ex. E, p. 21-22. The appellate court, agreed, determining that, under Illinois law, a defendant is entitled to an instruction on second degree murder where the intent to kill or to use deadly force in a felony-murder case is formed after the formation of his belief in the need for

16

self-defense.  <u>Answer</u>, Ex. B, p. 73-76.  The appellate court found that the refusal to give such an instruction constituted reversible error with regard to Morgan's conviction for the first degree murder of Lila.  The Illinois Supreme Court reversed.  <u>Morgan</u>, 758 N.E.2d at 839-41.  In doing so, the Court overruled two state cases upon which the appellate court had relied, and held that, under the plain language of the second degree murder statute, the provocation defense of second degree murder is not available to a charge of felony murder.

Morgan did not raise a due process claim relating to this issue on direct review; rather, he asserted state law claims.  Both the appellate court and the Illinois Supreme Court decided the issue on state law grounds. Morgan did not raise this issue during post-conviction proceedings.  Thus, Morgan failed to raise this due process claim through a complete round of Illinois appellate procedures, and it is procedurally defaulted.

In Claim 6, Morgan asserts that the trial court's refusal to dismiss the felony murder counts based on the fact that the predicate felonies merged with the homicides and could not support felony murder charges violated due process.  On direct review, Morgan did not state a due process claim relating to this issue, rather he asserted state law claims.  <u>Answer</u>, Ex. C, p.

88-91, Ex. E, p. 23, & Ex. I.  Both the appellate court and the Illinois Supreme Court decided the issue on state law grounds.  <u>Answer</u>, Ex. B., p. 64-70 ; <u>Morgan</u>, 758 N.E.2d at 836-39.  The Illinois Supreme Court agreed with Morgan, holding that, under Illinois law, "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." <u>Morgan</u>, 758 N.E.2d at 838.  The Court, however, determined that the trial court's error was harmless.  Again, Morgan did not raise this due process claim during postconviction proceedings.  Thus, Morgan failed to raise this due process claim through a complete round of Illinois appellate procedures, and it is procedurally defaulted.

This Court can consider procedurally defaulted claims only if Morgan can establish either: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) a fundamental miscarriage of justice will occur if the claim is not considered.  <u>Coleman</u>, 501 U.S. at 750. Morgan has presented no evidence to show either a fundamental miscarriage of justice or cause and prejudice.  The Court, therefore, cannot consider the merits of Claims 4 through 7.

Claims 1 through 3 remain for merit review.  This Court may issue a

writ of habeas corpus to a state official only if the state court decision denying Morgan's claims was: (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). If the state court identified the correct rule of law, then this Court will deny the habeas petition unless the state court's application of the law was not minimally consistent with the facts and circumstances of the case. Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997).

Claims 1 through 3 are intertwined and deal with statements that Morgan made to law enforcement officials on the evening of April 27, 1995. The Court turns first to Claims 2 and 3. In Claim 2, Morgan asserts that his statements to police were involuntary. In Claim 3, he contends that he did not knowingly and intelligently waive his Miranda rights prior to the interviews with Harberts. In analyzing these claims, the Illinois Supreme Court applied a "totality of the circumstances" test, which included consideration of such factors as Morgan's age, intelligence, background, experience, education, mental capacity, and physical condition at the time of questioning, as well as the duration and the legality of the detention, the

19

duration of the questioning, any mental or physical abuse by the police, and the existence of threats or promises on the part of the police. <u>Morgan</u>, 758 N.E.2d at 832. The Court specifically noted that no single factor was dispositive and stated "[t]he test of voluntariness is whether the individual made his confession freely and voluntarily, without compulsion or inducement of any kind, or whether the individual's will was overborne at the time of the confession." <u>Id</u>.

The Illinois Supreme Court applied the correct legal standard to Claims 2 and 3. <u>See</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>see also</u> <u>United States v. Shabaz</u>, 2009 WL 2616151, at *4 (7th Cir. Aug. 27, 2009). Moreover, the Illinois Supreme Court's application of law to the facts was reasonable. Morgan points out that he was only fourteen years old at the time of the crime, that he was handcuffed at the scene and later confined in a holding cell, that officers failed to contact either his parents or a juvenile officer, and that he was conditioned to please authority figures and thus would automatically answer officers questions. The record evidence supports these assertions. There is, however, additional evidence in the record as well. As the Illinois Supreme Court recognized, the record established that Morgan was an average student with normal reading,

writing and verbal skills; that he was not physically or mentally abused by the police during his interviews; and that the police did not make any threats or promises to Morgan.   The Illinois Supreme Court noted additionally that Morgan never requested an opportunity to speak to a concerned adult, and the officers did nothing to prevent a concerned adult from speaking to Morgan.  Since Morgan told police that his grandparents were his legal guardians, and they were then dead, the Illinois Supreme Court did not assess great weight to the fact that the police had not immediately tried to contact Morgan's parents.  The Illinois Supreme Court also noted that, significantly, at one point during the interviews Morgan refused to answer a question posed by Detective Harberts.  The Court noted other record evidence of instances in which Morgan had defied authority figures in the past.   The Illinois Supreme Court considered all of these relevant factors in reaching its conclusion.  Morgan, 758 N.E.2d at 833-35. The Illinois Supreme Court's determination that Morgan's statements were voluntary and that he knowingly and intelligently waived his Miranda rights is more than minimally consistent with the facts and circumstances of the case.  Morgan is not entitled to habeas relief on Claims 2 and 3.

In Claim 1, Morgan asserts that he was denied his Fifth Amendment

right against self-incrimination when he was subjected to custodial interrogation without receiving <u>Miranda</u> warnings.  As set forth above, after Morgan approached Spickard, handed him a gun and a box of bullets, and said, "I did it.  I killed them," Spickard took Morgan to the front of the house, where Detective Harberts was standing.  After Spickard informed Harberts that Morgan had turned over the gun and ammunition and had admitted to killing the Cearlocks, Harberts asked Morgan why he shot the Cearlocks, and Morgan replied,"Because they pissed me off.  I couldn't take it anymore so I shot them."  <u>Petition</u>, p. 8.  Morgan challenges Harberts' question and the admission of his answer.  According to Morgan, Harberts' question was designed to elicit an incriminating response.

The Illinois Supreme Court determined that even if the trial court erred in denying Morgan's motion to suppress his response to Harberts' question, any error was harmless because Morgan repeated this statement during the post-<u>Miranda</u> interviews with Harberts.  <u>Morgan</u>, 758 N.E.2d at 835.  In doing so, the Illinois Supreme Court cited <u>Oregon v. Elstad</u>, which provides the relevant Supreme Court precedent on the issue.  <u>Elstad</u>, 470 U.S. 298 (1985).  In <u>Elstad</u>, a case involving an eighteen year old burglary suspect, the Supreme Court held as follows:

> [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.  A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.

Id. at 314.  In the instant case, the Illinois Supreme Court reasonably applied the holding in Elstad.  The Illinois Supreme Court noted that the record contained no evidence to support a finding that Morgan's response to Harberts was involuntary.  The Court deemed it significant that the response came shortly after Morgan, on his own initiative, confessed to Spickard that he was the shooter.  Based on these facts, the Court concluded that the subsequent reading of Miranda warnings cured any condition that made the initial voluntary but unwarned statement inadmissible.  Morgan, 758 N.E.2d at 835.  Thus, Morgan is not entitled to habeas relief on Claim 1.  Therefore, the Petition must be denied.

Morgan filed a Motion for Appointment of Counsel (d/e 9), with exhibits showing that he has unsuccessfully attempted to acquire pro bono legal assistance and asking the Court to appoint an attorney to represent him in this case.  However, there is no general right to appointed counsel for an individual who wishes to pursue habeas relief.  Moreover, the record

reveals no need for discovery pursuant to Rule 6 of the Rules Governing Habeas Corpus Cases under § 2254 or an evidentiary hearing pursuant to Rule 8 of the Rules Governing Habeas Corpus Cases under § 2254. Therefore, the Motion for Appointment of Counsel is denied.

<u>CONCLUSION</u>

THEREFORE, Petitioner Jon Roe Morgan's Petition for Writ of Habeas Corpus (d/e 1) and his Motion for Appointment of Counsel (d/e 9) are DENIED. All pending motions are denied as moot. This case is closed. IT IS THEREFORE SO ORDERED.

ENTER:   September 23, 2009

FOR THE COURT:

_____s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE